IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DUPREE LAMONT ADKINS,

      Plaintiff,                      No. CIV S-05-1413 LKK EFB P

      vs.

J. WOODFORD, et al.,

      Defendants.              <u>FINDINGS AND RECOMMENDATIONS</u>

                                  /

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. On October 24, 2007, the court found that plaintiff's second amended complaint, when liberally construed, stated cognizable retaliation claims against defendants Sanchez and Armoskous. On October 10, 2008, defendants filed a motion for summary judgment on the ground that neither defendant retaliated against plaintiff in violation of his constitutional rights and that defendants are entitled to qualified immunity. The court has considered the moving and opposing papers and concludes that defendants' motion for summary judgment must be granted.

**I.    Facts**

The following facts are undisputed, except as noted below. Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) and housed at Richard J. Donovan Correctional Center, in San Diego, California. Defs.' Mot. for Summ. J.,

1

Stmt. of Undisp. Facts in Supp. Thereof ("SUF") 1; Pl.'s Opp'n, Mem. of P. & A. in Supp. Thereof ("Pl.'s P. & A.") at 4.  Plaintiff alleges he is a practicing Rastafarian who has taken the Vow of the Nazarite.  Pl.'s Second Am. Compl. ("Compl.") ¶¶ 1, 3.  Plaintiff further alleges that he has grown seven bunal locks and a beard, and believes that if he shaves, he will lose his strength and die.  *Id.* at ¶ 4.

In April and May 2004, plaintiff was housed at High Desert State Prison (HDSP).  SUF 2; Pl.'s P. & A. at 4.  He arrived at HDSP in 1997.  SUF 3.  He began styling his hair into "dreadlocks" in 1998.  SUF 4.  While styling his hair in this manner, plaintiff did not cut his hair, even though he knew it violated the CDCR inmate grooming policy.  SUF 4, 5, 6.

In April 2004, a correctional sergeant warned plaintiff that his hairstyle violated the inmate grooming policy, however, plaintiff did not trim his hair.  SUF 7.  Thereafter, plaintiff filed an administrative grievance against this correctional sergeant.  SUF 8.

On April 28, 2004, defendant Sanchez, a correctional officer, warned plaintiff that his hairstyle violated the inmate grooming policy.  SUF 9.  Despite the warning, plaintiff did not trim his hair.  SUF 10.  On May 1, 2004, Sanchez again warned plaintiff that his hairstyle violated the inmate grooming policy and that further violation would result in plaintiff being issued a CDC 115 Rules Violation Report (RVR).[1]  SUF 11.  After speaking with plaintiff, Sanchez intended to place a Counseling Chrono in plaintiff's file that documented his repeated warning of plaintiff to trim his hair.  SUF 12.  However, Sanchez did not sign the Counseling Chrono until May 9, 2004.  *Id.*

On May 2, 2004, Sanchez issued a CDC 115 RVR to plaintiff for violating inmate grooming standards.  SUF 13.  At his deposition, plaintiff testified that he believed that Sanchez

---

[1] Correctional staff address inmate misconduct through progressive discipline. Progressive discipline can incorporate a sequence of:  (1) verbal warnings; (2) the issuance of a CDC 128a Custodial Counseling Chrono; (3) the issuance of a CDC 115 Administrative Rules Violation Report; and (4) the issuance of a CDC 115 Rules Violation Report.  Defs.' Mot. for Summ. J., Decl. of M. Sanchez in Supp. Thereof ¶ 2.

filed the CDC 115 RVR not because of plaintiff's hair, but in retaliation for plaintiff having filed an administrative grievance against another correctional sergeant. Defs.' Mot. for Summ. J., Ex. B at 29; *see also* Compl., Ex. B at unnumbered pages 10, 11.

A hearing was held on the CDC 115 RVR, and during the hearing plaintiff admitted that he knew his hairstyle violated the inmate grooming policy, but nonetheless, refused to trim his hair. SUF 14. Plaintiff was found guilty of violating the CDCR's grooming standards. *Id.*

Subsequently, plaintiff filed an administrative grievance claiming that Sanchez was required to file a Counseling Chrono before issuing the CDC 115 RVR, and that Sanchez's CDC 115 RVR falsely stated that plaintiff had received a prior violation of the grooming policy. SUF 15; Compl., Ex B at unnumbered pages 2, 3. Upon reevaluation, plaintiff's CDC 115 RVR was reduced to an administrative RVR. SUF 15; Compl., Ex. B at unnumbered pages 5-8.

Finally, plaintiff alleges that in September 2004, defendant Armoskous, an associate warden at HDSP, transferred plaintiff to a higher-security level within HDSP. Compl. ¶ 7, Ex. C. Plaintiff contends the transfer was in retaliation for plaintiff's refusal to cut his hair and for filing administrative grievances against various correctional officers. Pl.'s P. & A. at 3. Plaintiff further alleges that the transfer resulted in plaintiff's inability to use the prison chapel for religious observance, in violation of plaintiff's First Amendment right to practice his religion. Compl. ¶ 7.

## II.  Summary Judgment Standards

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).

Summary judgment avoids unnecessary trials in cases with no genuinely disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over material facts; *e.g.*, issues that can only be determined through presentation of testimony at trial such as the credibility of conflicting testimony over facts that make a difference in the outcome. *Celotex*, 477 U.S. at 323.

Focus on where the burden of proof lies as to the issue in question is crucial to summary judgment procedures. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the opposing party must establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the claim under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

4

party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In this regard, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. In attempting to establish the existence of a factual dispute that is genuine, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.

Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). However, the opposing party must demonstrate with adequate evidence a genuine issue for trial. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989). The opposing party must do so with evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252. If the evidence presented could not support a judgment in the opposing party's favor, there is no genuine issue. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. at 323.

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to

demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

On February 11, 2008, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

### III. Analysis

As noted, plaintiff claims that Sanchez filed a CDC 115 RVR against plaintiff to retaliate against plaintiff for having filed an administrative grievance against another correctional sergeant. Plaintiff also claims that Armoskous transferred plaintiff to a higher security level to retaliate against plaintiff for having filed administrative grievances against various correctional officers and because plaintiff refused to trim his hair in accordance with the CDCR inmate grooming policy. Within the prison context, a retaliation claim has five basic elements: (1) a state actor took some adverse action against a prisoner; (2) because (3) the prisoner engaged in protected conduct; (4) resulting in the chilling of plaintiff's First Amendment rights; and (5) the action did not reasonably advance a legitimate penological goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

#### A. Defendant Sanchez

Sanchez does not dispute his disciplinary acts in April and May 2004 were adverse to plaintiff, nor does he dispute that plaintiff engaged in protected conduct. Defs.' P. & A. at 6; Defs.' Reply at 2. Sanchez also admits that the discipline he imposed upon plaintiff resulted in "relevant actual injuries" for plaintiff. Defs.' P & A. at 7.

Sanchez contends that plaintiff's retaliation claim fails because plaintiff cannot establish that Sanchez filed a CDC 115 RVR against plaintiff *because of* plaintiff's exercise of his First

6

Amendment rights. *Id.* at 6-7. According to Sanchez, he did not even know that plaintiff had filed an administrative grievance against a correctional sergeant when he disciplined plaintiff in April and May 2004. SUF 17.

Plaintiff argues that it can be inferred that Sanchez's report was retaliatory because it contained false statements. Pl.'s P. & A. at 3, 4, 5. The argument asks for inferences that simply are not reasonable and do not follow from the evidence. Plaintiff submits evidence showing that Sanchez's report was reduced to an administrative offense because (1) it was improperly categorized, as plaintiff had not received any prior CDC 115s for failing to comply with grooming regulations, and (2) plaintiff was not afforded progressive discipline because he was not first found guilty of an administrative RVR. Pl.'s Opp'n, Ex. D at unnumbered pages 3-6. While the evidence shows that Sanchez's report was improperly classified and that plaintiff was not afforded progressive discipline, it does not show that Sanchez intentionally made any false statements. Nor does such a conclusion reasonably follow. Improper classification aside, plaintiff admits that his hairstyle violated the CDCR inmate grooming policy, i.e., that he was guilty of the charged offense. SUF 14. Moreover, the evidence does not raise an inference that Sanchez filed the report, flawed as it was, with retaliatory intent.

Aside from plaintiff's speculation no evidence exists that Sanchez disciplined plaintiff because plaintiff had filed an administrative grievance in the past. *See* SUF 16. Thus, plaintiff has failed to raise a material issue of fact concerning the requisite causal connection between plaintiff's protected conduct and defendants' adverse action. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (finding insufficient evidence of prison officials' awareness of inmate's First Amendment activities). As such, Sanchez is entitled to summary judgment. Plaintiff has not established that Sanchez knew about plaintiff's prior administrative grievance and plaintiff otherwise fails to raise a reasonable inference of retaliatory action. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) ("Sweeping conclusory allegations will not suffice to prevent summary judgment.").

### B.     Defendant Armoskous

Armoskous contends that there is no evidence that he was involved in plaintiff's transfer or otherwise performed an adverse act against plaintiff. Defs.' P. & A. at 2. Armoskous argues that since he did not perform an adverse act against plaintiff, plaintiff has failed to satisfy this element of his retaliation claim against him, and the court should enter summary judgment in his favor. *Id.* Indeed, plaintiff merely speculates that Armoskous caused plaintiff to be transferred to a more secure facility. In his deposition, plaintiff stated his belief that Armoskous was responsible for the housing of inmates. Defs.' Mot. for Summ. J., Lodged Doc. in Supp. Thereof ("Lodged Doc.") at 33. He also stated that he was transferred by a person named Wilbur, and that he believed the transfer was retaliatory. *Id.* at 31. However, plaintiff also admitted that he did not know what role, if any, Armoskous had in his transfer. *Id.* at 31, 33. Additionally, while plaintiff points to several administrative grievances he filed against either Armoskous and/or other correctional staff, it is merely speculation to assume that Armoskous retaliated against plaintiff for filing such grievances. *See* Pl.'s Opp'n, Exs. A, D. *See also Pratt*, 65 F.3d at 808 (neither timing alone nor sheer speculation is sufficient to support a retaliation claim). Plaintiff has failed to raise a material issue of fact concerning whether Armoskous took an adverse action against plaintiff and therefore, Armoskous is entitled to summary judgment.

### C.     Qualified Immunity

Defendants contend that they are entitled to qualified immunity from plaintiff's retaliation claims. An official is entitled to qualified immunity unless: (1) the plaintiff alleged facts that show a constitutional violation, and (2) it was clearly established, at the time, that the conduct was unconstitutional. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Since the court finds that defendants are entitled to summary judgment, the court concludes that they did not violate plaintiff federally protected rights and need not address further the subsequent step to the analysis of qualified immunity. *See Wilkie v. Robbins*, 127 S. Ct. 2588, 2608 (2007).

////

**IV.   Conclusion**

As to each defendant, plaintiff has failed to demonstrate that there is a genuine issue for trial.  Therefore, defendants' motion for summary judgment must be granted.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' October 10, 2008 motion for summary judgment be granted and that judgment be entered in favor of each defendant.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 24, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE